UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ANDRANIK SHAHKARAMI,<br><br>　　　　　Defendant. | Case No. 5:20-cv-07263-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: ECF 17] |

Plaintiff Scott Johnson brings this action against Andranik Shahkarami, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the California Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code §§ 51–53. *See* Compl. ¶¶ 34–49, ECF 1. Mr. Johnson seeks injunctive relief along with statutory damages, attorneys' fees, and costs.

Defendant Andranik Shahkarami never answered the Complaint or otherwise appeared in this matter. At Mr. Johnson's request, this Court entered default against Mr. Shahkarami on January 27, 2021. *See* Mot. for Entry of Default, ECF 15; Entry of Default, ECF 16. Now before the Court is Mr. Johnson's Memorandum of Points and Authorities in Support of Application for Default Judgment ("Motion"). Mot., ECF 17-1. Mr. Shahkarami was notified of Mr. Johnson's Motion on February 23, 2021. *See* Proof of Service, ECF 17-13; *see also* Fed. R. Civ. P. 55(b)(2). Mr. Shahkarami did not oppose or otherwise respond to the Motion. Briefing on the matter is now closed. *See* Civ. L.R. 7-3(a). Pursuant to Civil Local Rule 7-1(b), the Court finds that this motion is appropriate for determination without oral argument, and the June 17, 2021 hearing is VACATED. For the reasons discussed below, the Court GRANTS Plaintiff's Motion for Default Judgment with the terms stated below.

## I. BACKGROUND

According to his Complaint, Mr. Johnson is a level C-5 quadriplegic who cannot walk and has significant manual dexterity impairments. Compl. ¶ 1. Mr. Johnson says that he uses a wheelchair for mobility and has a specially equipped van. *Id.* Mr. Shahkarami is the alleged owner of the real property (the "Store") open to the public located at or about 39990 Fremont Blvd, Fremont, California. *Id.* ¶¶ 2–5, 11.

Mr. Johnson alleges that barriers at the Store prevented him from enjoying full and equal access to the facility. *Id.* ¶¶ 10–31. Specifically, Mr. Johnson alleges that he visited the Store on several occasions, including twice in July 2020 and once in June and August 2020. *Id.* ¶ 10; Mot. 1–2. During each of those visits, Mr. Johnson claims that Defendants failed to provide accessible parking. Compl. ¶¶ 12–17. In particular, Mr. Johnson alleges that "there was no access aisle that accompanied the parking stall." Compl. ¶ 14. In addition, "[t]he Gas Station provides entrance door hardware to its customers but fails to provide wheelchair accessible entrance door hardware." *Id.* at ¶ 18. Additionally, Mr. Johnson alleges that Mr. Shahkarami "failed to provide wheelchair accessible sales counters," as the counters were "too high and there was no lowered portion of the sales counter suitable for wheelchair users." *Id.* at ¶¶ 22, 25. Mr. Johnson claims that he personally encountered these barriers and that Mr. Shahkarami's failure to provide accessible parking created "difficulty and discomfort" for him. *Id.* ¶ 29. Mr. Johnson claims that he will return to the Store once it is represented to him that the Store and its facilities are accessible. *Id.* ¶ 32; Mot. 2.

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action, and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a).

After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors, known as the *Eitel* factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7)

the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). When the damages claimed are not readily ascertainable from the pleadings and the record, a court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

### III. JURISDICTION AND SERVICE OF PROCESS

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### A. Subject matter jurisdiction

District courts have subject matter jurisdiction of all civil actions arising under the laws of the United States. 28 U.S.C. § 1331. Further, in any civil action where the district courts have subject matter jurisdiction, the district courts will also have supplemental jurisdiction over all other claims that are so related to claims in the action, such that they form part of the same case or controversy. 28 U.S.C. § 1367. Mr. Johnson's claim for relief pursuant to the ADA presents a civil action arising under a law of the United States. Therefore, this Court has subject matter jurisdiction over Mr. Johnson's ADA claim. Moreover, Mr. Johnson's claim for relief pursuant to the Unruh Act is related to the ADA claim because it arises out of the same "case or controversy," namely Mr. Johnson's visits to the Store where he encountered alleged violations of both laws. *See* 28 U.S.C. § 1367(a). Therefore, the Court has supplemental jurisdiction over Mr. Johnson's Unruh Act claim.

#### B. Personal jurisdiction and service of process

Serving a summons establishes personal jurisdiction over a defendant, who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. Fed. R. Civ. P. 4(k)(1). Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, an individual defendant may be served by: (1) delivering a copy of the summons and complaint to the individual

3

1  personally; (2) leaving a copy of the summons and complaint at the individual's dwelling or usual
2  place of abode with someone of suitable age and discretion who resides there; or (3) delivering a
3  copy of the summons and complaint to an agent authorized by appointment or law to receive
4  service of process. Fed. R. Civ. P. 4(e)(2). Alternatively, an individual defendant may be served
5  with process pursuant to the law of the state where the district court is located. Fed. R. Civ. P.
6  4(e)(1). Under California law, individual defendants may be served by several means, including
7  personal delivery of the summons and complaint to the individual or the individual's authorized
8  agent. Cal. Code Civ. Proc. §§ 415.10, 416.90. An individual defendant may also be served under
9  California law through substituted service by "leaving a copy of the summons and complaint
10  during usual office hours in [the defendant's] office . . . with the person who is apparently in
11  charge thereof . . . and by thereafter mailing a copy of the summons and complaint . . . where a
12  copy of the summons and complaint were left." Cal. Code Civ. Proc. § 415.20(a).
13     The record indicates that Mr. Johnson successfully served Mr. Shahkarami on October 29,
14  2020, via substituted service by leaving copies of the summons and complaint at his home with a
15  competent member of the household over the age of 18 and thereafter mailing a copy of summons
16  and complaint at the place where the copies were left. *See* Proof of Service of Summons, ECF 11.
17  As such, the Court is satisfied that Mr. Johnson gave Mr. Shahkarami proper service of process
18  under both the Federal Rules of Civil Procedure and the California Code of Civil Procedure.
19  Therefore, the Court has personal jurisdiction over Mr. Shahkarami.

## IV.  *EITEL* FACTORS

For the reasons to be discussed, the *Eitel* factors weigh in favor of entering default judgment.

### A.  The possibility of prejudice to Plaintiff

The first *Eitel* factor requires the Court to consider whether Mr. Johnson would be prejudiced if default judgment is not entered. Unless default judgment is entered, Mr. Johnson will have no other means of recourse against Defendants. As such, Mr. Johnson will be prejudiced if default judgment is not entered. *See, e.g.*, *Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal. May 18, 2018) (finding that plaintiff would be prejudiced if default

4

1  judgment was not entered because she "would have no other means of recourse against Defendants
2  for the damages caused by their conduct").

### B. The merits of Plaintiff's claims and the sufficiency of the complaint

Pursuant to the second and third *Eitel* factors, this Court concludes that the Complaint alleges meritorious substantive claims for relief under the ADA and the Unruh Act.

#### i. Title III of the ADA, 42 U.S.C. § 12101, *et seq.*

Title III of the ADA prohibits discrimination on the basis of disability within places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title III, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

##### a. Plaintiff's Article III Standing

In order to bring a claim under Title III of the ADA, Mr. Johnson must establish Article III standing. To establish Article III standing, Mr. Johnson must demonstrate he suffered an injury in fact, traceable to Defendants' conduct, and redressable by a favorable court decision. *Ridola*, 2018 WL 2287668, at *5 (citing *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006)). Mr. Johnson claims that he suffers from a disability within the meaning of the ADA. Mot. 6. Mr. Johnson also alleges that he personally encountered access barriers at the Store with respect to the parking lot, entrance door, and lack of suitable sales counter. Compl. ¶¶ 12–31. Further, Mr. Johnson claims that he will return to the Store once its facilities are made accessible. Compl. ¶ 32; Mot. 3; *see Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014) ("Indeed, '[d]emonstrating an intent to return to a non-compliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief.'" (quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011)).

1  Because Mr. Johnson's factual allegations are accepted as true, and an award of statutory
2  damages and injunctive relief would redress Mr. Johnson's alleged injuries caused by Defendants'
3  conduct, the Court finds that Mr. Johnson has Article III standing to sue under the ADA.

### b. ADA Claim Elements

To prevail on his Title III discrimination claim, Mr. Johnson must show that (1) he is disabled within the meaning of the ADA; (2) Defendants own, lease, or operate a place of public accommodation; and (3) he was denied public accommodations by Defendants because of his disability. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). To succeed on an ADA claim based on architectural barriers, Mr. Johnson "must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable." *Ridola*, 2018 WL 2287668, at *5.

Mr. Johnson has adequately alleged an ADA claim. First, Mr. Johnson has established that he has a disability within the meaning of the ADA. Under the ADA, a physical impairment that substantially affects a major life activity, such as walking, qualifies as a disability. 42 U.S.C. §§ 12102(1)(A), (2)(A). Mr. Johnson is a C-5 quadriplegic who uses a wheelchair for mobility. Compl. ¶ 1; Mot. 1, 8. Second, Mr. Johnson alleges that Mr. Shahkarami owns the Store, a place of public accommodation. Compl. ¶¶ 2–5, 11; *see also* 42 U.S.C. § 12181(7)(E) (listing "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment" as a place of public accommodation). Third, Mr. Johnson alleges that during several visits to the Store, he personally encountered access barriers with respect to the parking lot, entrance door, and lack of a suitable sales counter. Compl. ¶¶ 11–31; Mot. 9–10.

Next, with respect to the architectural barriers, Mr. Johnson contends that Defendants' parking lot, entrance door, and lack of suitable sales counter are architectural barriers that violate the 2010 Standards of the ADA Accessibility Guidelines (the "ADAAG"). Mot. 9-10. The ADAAG provide "objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman*, 631 F.3d at 945. As such, "a violation of the ADAAG constitutes a barrier under the ADA." *Ridola*, 2018 WL 2287668, at *7. However, Mr. Johnson incorrectly applies the 2010 Standards to his claims. The

6

1991 Standards apply to construction completed before March 15, 2012, while the 2010 Standards apply to construction or alterations after that date. *See id.* ("Alterations to facilities undertaken after March 15, 2012 must comply with the 2010 Standards." (citing 28 C.F.R. § 35.151(c)(5)(i))). Here, Mr. Johnson submits public records showing that the Store was constructed in 1971, prior to March 2012, but does not submit evidence that construction or alteration has been made to the Store since 1971. *See* Mot. Ex. 5, Public Rs. 10–13, ECF 17-7. Accordingly, the Court applies the 1991 ADAAG Standards. However, the 2010 Standards govern any injunction that the Court issues, as all remedial work will be undertaken after March 15, 2012.

Mr. Johnson claims that the Store's failure to provide accessible parking violates the ADAAG Standards. Mot. 9–10. In particular, Mr. Johnson argues that the Store fails to provide an access aisle. Mot. 1-2, 9. Under the 1991 Standards, parking spaces must be adjacent to an access aisle. 28 C.F.R., Pt. 36, App. D § 4.6.3. "An essential consideration for any design is having the access aisle level with the parking space." *Id.* "Since a person with a disability, using a lift or ramp, must maneuver within the access aisle, the aisle cannot include a ramp or sloped area." *Id.* Mr. Johnson alleges that there is no access aisle between the accessible parking spaces. Mot. 9; *see* Mot. Ex. 4, Pictures, ECF 17-6. Accepting Mr. Johnson's allegations as true, the Court finds that he has successfully demonstrated that the Store's parking aisle is not in compliance with the ADA (or, as discussed below, the Unruh Act) and that the condition of the parking aisle denied him full and equal access to the Store and parking lot because of his disability.

Mr. Johnson claims that the Store's failure to provide an accessible entrance door violates the ADAAG Standards. Mot. 9–10. In particular, Mr. Johnson argues that the Store fails to provide an accessible door handle. Mot. 2, 9. Under the 1991 Standards, door handles must be "a shape that is easy to grasp with one hand." 28 C.F.R., Pt. 36, App. D § 4.13.9. Mr. Johnson alleges that handle is not a shape that is easy to grasp with one hand. Mot. 9; *see* Mot. Ex. 4, Pictures, ECF 17-6. Accepting Mr. Johnson's allegations as true, the Court finds that he has successfully demonstrated that the Store's entrance door is not in compliance with the ADA (or, as discussed below, the Unruh Act) and that the condition of the door handle denied him full and equal access to the Store because of his disability.

1  Mr. Johnson claims that the Store's failure to provide an accessible sales counter violates
2  the ADAAG Standards. Mot. 9–10. In particular, Mr. Johnson argues that the Store fails to
3  provide a wheelchair accessible sales counter at the appropriate height. Mot. 2, 9. Under the 1991
4  Standards, sales counters must be a maximum height of 36 inches." 28 C.F.R., Pt. 36, App. D
5  § 7.2.1. Mr. Johnson alleges that sales counter is over 36 inches. Mot. 10; *see* Mot. Ex. 4, Pictures,
6  ECF 17-6. Accepting Mr. Johnson's allegations as true, the Court finds that he has successfully
7  demonstrated that the Store's sales counter is not in compliance with the ADA (or, as discussed
8  below, the Unruh Act) and that the condition of the sales counter denied him full and equal access
9  to the Store because of his disability.

10  With respect to the "readily achievable" element of his ADA claim, citing *Wilson v. Haria*
11  *& Gogri Corp.*, Mr. Johnson argues that the question of whether removal of the barriers is "readily
12  achievable" is an affirmative defense that must be pled by the answering party. *See* Mot. 10; *see*
13  *also* 479 F. Supp. 2d 1127, 1133 (E.D. Cal. 2007). Accordingly, Mr. Johnson believes that this
14  affirmative defense has been waived because Defendants have not appeared in this matter. *See*
15  Mot. 10.

16  The Ninth Circuit recently decided to follow a burden-shifting framework to determine
17  who bears the burden of proving that removal of an architectural barrier is readily achievable. *See*
18  *Lopez v. Catalina Channel Express, Inc.*, No. 19-55136, 2020 WL 5405677, at *3–*5 (9th Cir.
19  Sept. 9, 2020). Under this burden-shifting analysis, the plaintiff bears the initial burden of
20  *plausibly* showing that a proposal for removing a barrier is readily achievable, and then the
21  defendant bears the ultimate burden of persuasion on an affirmative defense that removal of a
22  barrier is not readily achievable. *See id.*

23  In this action, Mr. Johnson has met his initial burden to plausibly show that removal of the
24  identified barriers in the parking lot, entrance door, and sales counter are readily achievable. Mr.
25  Johnson alleges that the identified barriers are "easily removed without much difficulty or
26  expense" and that they are "the types of barriers identified by the Department of Justice as
27  presumably readily achievable to [be] remove[d]." Compl. ¶ 31. Additionally, the Complaint
28  alleges that "there are numerous alternative accommodations" to provide people with disabilities a

1  greater level of access even if Defendants could not achieve a complete removal of barriers. *Id.*

2  Federal regulations provide a non-exclusive list of steps to remove barriers, including
3  "[c]reating designated accessible parking spaces," 28 C.F.R. § 36.304(b)(18). Courts have also
4  observed that the listed items are "examples of readily achievable steps to remove barriers."
5  *Johnson v. Altimira Corp.*, No. 16-cv-05335 NC, 2017 WL 1383469, at *3 (N.D. Cal. 2017).
6  Moreover, at the default judgment stage, courts have found allegations similar to Mr. Johnson's
7  allegations sufficient to show that the removal of the barriers at issue is readily achievable. *See,*
8  *e.g.*, *Ridola*, 2018 WL 2287668, at *10–*11 (concluding that plaintiff met his burden with respect
9  to defendant's parking spaces and guestrooms).

10  Because Mr. Johnson has met his burden, Mr. Shahkarami now has the burden of
11  persuasion on an affirmative defense that removal of the identified barriers is not readily
12  achievable. Here, Mr. Shahkarami has not defended this action. Thus, Mr. Shahkarami has failed
13  to meet his burden to show that removal of the identified barriers is not readily achievable.

14  In sum, the Court finds that Mr. Johnson has alleged the requisite elements for an ADA
15  claim.

### ii.   Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53

17  "Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *M.J.*
18  *Cable, Inc.*, 481 F.3d at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)). Thus, because Mr.
19  Johnson has alleged an ADA claim based on the Store's parking spaces, entrance door, and sales
20  counter, he has also alleged an Unruh Act claim based on those barriers.

### C.   The amount of money at stake

22  The fourth *Eitel* factor requires the Court to consider the sum of money at stake in relation
23  to the seriousness of a defendant's conduct. *Love v. Griffin*, No. 18-cv-00976-JSC, 2018 WL
24  4471073, at *5 (N.D. Cal. Aug. 20, 2018). Mr. Johnson seeks statutory damages of $4,000 under
25  the Unruh Act and an award of $5,547.50 for attorneys' fees and costs. Mot. 11. The Court has
26  reduced this amount, as discussed below. While the sum awarded is not insignificant, the Court
27  finds that it is proportional to the conduct alleged and that this factor weighs in favor of default
28  judgment.

### D. The possibility of a dispute concerning material facts and whether Defendants default was due to excusable neglect

Under the fifth and sixth *Eitel* factors, the Court considers whether there is a possibility of a dispute over any material fact and whether Defendants' failure to respond was the result of excusable neglect. *Griffin*, 2018 WL 4471073, at *5; *Ridola*, 2018 WL 2287668, at *13. Because Mr. Johnson pleads plausible claims for violations of the ADA and the Unruh Act, and as all liability-related allegations are deemed true, there is nothing before the Court that would indicate a possibility of a dispute as to material facts. Moreover, there is no indication that Mr. Shahkarami's default was due to excusable neglect. Mr. Shahkarami has never appeared in this case, suggesting that he has chosen not to present a defense in this matter. Accordingly, these factors weigh in favor of default judgment.

### E. The strong policy favoring decisions on the merits

While the Court prefers to decide matters on the merits, Defendants' failure to participate in this litigation makes that impossible. *See Ridola*, 2018 WL 2287668, at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate."). Default judgment, therefore, is Mr. Johnson's only recourse. *See United States v. Roof Guard Roofing Co.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome."). As such, the seventh *Eitel* factor weighs in favor of default judgment.

### F. Conclusion

After considering all seven *Eitel* factors and the circumstances of this case, the Court finds that default judgment is warranted and GRANTS Plaintiff's motion for default judgment against Defendants.

## V. REQUESTED RELIEF

Because this Court concludes that default judgment is warranted, it now considers Mr. Johnson's request for injunctive relief, statutory damages under the Unruh Act, and attorneys' fees and costs.

### A. Injunctive relief

Mr. Johnson requests an order directing Defendants to bring the Store's parking spaces, entrance door and sales counter into compliance with the 2010 ADAAG Standards. *See* Mot. 13. "A plaintiff need not satisfy '[t]he standard requirements for equitable relief . . . when an injunction is sought to prevent the violation of a federal statute [that] specifically provides for injunctive relief.'" *Griffin*, 2018 WL 4471073, at *6 (quoting *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011)). Under the ADA, aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *M.J. Cable, Inc.*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)). Injunctive relief is also available under the Unruh Act. *See* Cal. Civ. Code § 52.1(h). Injunctive relief is proper where the plaintiff establishes that "architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668, at *13 (internal citation omitted). As discussed above, Mr. Johnson has demonstrated that the Store's parking lot, entrance door, and sales counter violate the ADA and that the removal of the associated barriers is readily achievable.

Accordingly, the Court grants Plaintiff's request for injunctive relief to bring the Store's parking lot entrance door, and sales counter in line with the 2010 ADAAG Standards.

### B. Statutory damages

Mr. Johnson seeks $4,000 in statutory damages for the Store's violation of the Unruh Act. Mot. 13. The Unruh Act provides a minimum statutory damages award of $4,000 for each violation. Cal. Civ. Code § 52(a). Mr. Johnson "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000." *M.J. Cable, Inc.*, 481 F.3d at 731. "Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *Id.* at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)). Mr. Johnson has sufficiently pled that the parking lot, entrance door, and sales counter at the Store violated the ADA on the four separate occasions he visited the Store. As such, these barriers at the Store constitute a violation of the Unruh Act. The Court, therefore, grants Mr. Johnson $4,000 in statutory damages.

11

### C. Attorneys' fees

Mr. Johnson requests $5,547.50 in attorneys' fees under both the ADA and the Unruh Act. Mot. 11. In support of the fees requested, Mr. Johnson presents detailed billing entries attached to the Declaration of Russell Handy, expert analysis of fees for ADA-plaintiff attorneys by fee experts Richard Pearl and John O'Connor, and a survey report pulled from the Real Rate Report for 2018. Mot. 14–20; *see* Mot. Ex. 1, Decl. of Russell Handy ("Handy Decl."), ECF 17-3[1]; Mot. Ex. 6, Decl. of Richard M. Pearl ("Pearl Decl."), ECF 17-8; Mot. Ex. 7, Real Estate Report, ECF 17-9; Mot. Ex. 8, Decl. of John D. O'Connor ("O'Connor Decl."), ECF 17-10.

Further, Mr. Johnson cites four cases from the Northern District of California that have granted attorneys' fees at the hourly rates Mr. Johnson is requesting. Mot. 20 n.5. The Court, however, is not persuaded that this evidence justifies the attorneys' fees requested by Mr. Johnson.

#### i. Legal Standard

The ADA gives courts the discretion to award attorneys' fees to prevailing parties. *M.J. Cable, Inc.*, 481 F.3d at 730 (citing 42 U.S.C. § 12205). Additionally, the Unruh Act provides that "[i]n addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to [Cal. Civ. Code § 52.1(b)], the court may award the petitioner or plaintiff reasonable attorney's fees." Cal. Civ. Code § 52.1(i).

Whether calculating attorneys' fees under California or federal law, courts follow "the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)). Under the lodestar method, the most useful starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on other grounds by Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.*

---

[1] The Court notes that Mr. Handy states he is the attorney of record for the moving party, "Plaintiff Samuel Love," but the plaintiff in this case is Plaintiff Scott Johnson. *See* Handy Decl. ¶ 1.

12

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th. Cir. 1997). The fee applicant bears the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum*, 465 U.S. at 896 n.11.

Further, the district court should exclude hours that were not reasonably expended. *See Hensley*, 461 U.S. at 434. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." *Hensley*, 461 U.S. at 437.

### ii. Discussion

#### a. Rates

The Court finds that the rates Mr. Johnson seeks exceed the rates granted in this community for similar work performed by attorneys of comparable skill, experience, and reputation. The relevant community for this action is the Northern District of California. Indeed, for attorneys with approximately 20 or more years of experience, courts in this district have generally approved hourly rates ranging from $350 to $495 in disability cases. *See, e.g.*, *Castillo-Antonio v. Lam*, No. 18-cv-04593-EDL, 2019 WL 2642469, at *7 (N.D. Cal. Apr. 10, 2019) (approving, on motion for default judgment, $350 hourly rate for attorney with over 20 years of experience); *Johnson v. Castagnola*, No. 18-cv-00583-SVK, 2019 WL 827640, at *2 (N.D. Cal. Feb. 21, 2019) (approving $350 hourly rate for attorney with 20 years of litigation experience, noting that requested rate was unopposed by defendant and in line with rates approved in Northern District); *Wilson v. Red Robin Int'l, Inc.*, No. 17-cv-00685-BLF, 2018 WL 5982868, at *3 (N.D. Cal. Nov. 14, 2018) (approving $495 hourly rate for attorney with 24 years of experience in civil rights litigation, including 12 years devoted to disability law and $475 hourly rate for attorney with over 17 years of litigation experience and more than 8 years of experience in disability law).

Here, Mr. Handy has 20 years of experience, Mr. Potter has 25 years of experience and Ms. Gutierrez has about five years of experience focusing on disability cases. *See* Handy Decl. ¶¶ 3–6. This Court is mindful of the Ninth Circuit's observation that "[t]he district court's function is to award fees that reflect economic conditions in the district; it is not to 'hold the line' at a particular rate, or to resist a rate because it would be a 'big step.'" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). Mr. Handy and Mr. Potter have recently been granted hourly rate increases, from $425 to $475, in actions representing Mr. Johnson, and Ms. Seabock has recently been granted an hourly rate of $350. *See Johnson v. Oakwood Ctr. LLC*, No. 19-cv-01582-VKD, 2019 WL 7209040, at *12 (N.D. Cal. Dec. 27, 2019) (denying Mr. Potter and Mr. Handy an hourly rate of $650, instead granting an hourly rate of $475; granting Ms. Seabock an hourly rate of $350); *see also Johnson v. VN Alliance LLC*, No. 18-CV-01372-BLF, 2019 WL 2515749 (N.D. Cal. June 18, 2019) (granting Mr. Potter and Mr. Handy an hourly rate of $425). In view of the range of rates approved for attorneys practicing in this field, and further recognizing that "decisions pertaining to the same attorneys in question are particularly salient," the Court awards fees for Mr. Handy and Mr. Potter at $475 per hour and for Ms. Seabock at $350 per hour. *See Oakwood Ctr. LLC*, 2019 WL 7209040, at *12. As an attorney who graduated about five years ago and has less than five years of experience litigating disability cases, this court awards Ms. Gutierrez $250 per hour. *See Johnson v. AutoZone, Inc.*, No. 17-CV-02941-PJH, 2019 WL 2288111, at *7 (N.D. Cal. May 29, 2019) (awarding a $250 hourly fee rate for attorneys who graduated law school between five and eight years ago in a similar ADA case involving Mr. Johnson, who was represented by the same firm in this action).

The Court is not persuaded by Mr. Johnson's cited cases or support. To support the reasonableness of the hourly rates in the Motion ($650 and $450), Mr. Johnson relies on *In re Linkedin* and *In re Magsafe* as examples of attorneys' rates in the Northern District of California. *See* Mot. 16 (citing *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015), and *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-cv-01911-EJD, 2015 WL 428105, at *11-12 (N.D. Cal. Jan. 30, 2015)). *In re Linkedin* and *In re Magsafe*, however, are both class action suits that do not contain any ADA claims. *See In re Linkedin*, 309 F.R.D. at 580–81; *In re Magsafe*,

14

1   2015 WL 428105, at *1. Moreover, the relevant community is only one of the considerations
2   when determining an appropriate hourly rate. Mr. Johnson does not provide any information about
3   the skill, experience, or reputation of the attorneys in either of those cases. Therefore, the Court is
4   not persuaded that the rates awarded in either case are appropriate here.

5   Next, Mr. Johnson relies on declarations by fee experts Richard Pearl and John O'Connor
6   along with a survey report from the Real Rate Report for 2018. *See* O'Connor Decl.; Pearl Decl.;
7   Real Estate Report. In his declaration, Mr. Pearl's survey of ADA cases shows that attorneys with
8   20 to 25 years of experience had court-approved rates of between $500 and $675 per hour, while
9   attorneys with more than six years of experience had court-approved rates ranging between $350
10  and $425 per hour. Pearl Decl. ¶¶ 9(a)–9(b). Attorneys with less than five years of experience had
11  court-approved rates ranging between $250 and $435 per hour. Pearl Decl. ¶ 9(a). Similarly, the
12  Real Rate Report shows that median rates for partners doing litigation work in San Jose is $675
13  per hour and median rates for associates is $495 per hour. Real Estate Report 016. However, Mr.
14  Pearl's declaration and the Real Rate Report fail to consider the nature of work done and the skill
15  or reputation of the attorneys in each case. As such, the Court is not persuaded that Mr. Pearl's
16  declaration or the Real Rate Report provide a more salient assessment of rates than those
17  previously granted to Mr. Johnson's attorneys.

18  In addition, Mr. O'Connor states in his declaration that reasonable partner fee rates in
19  ADA cases range from $450 to $750 per hour, while an appropriate range for associates is
20  between $350 and $550 per hour. O'Connor Decl. ¶ 33. This is similar to what the Court has
21  awarded to Mr. Johnson's attorneys in this case, and Mr. Johnson does not adequately justify the
22  high ends of the stated rates. "[W]hen a matter 'is a relatively simple one, involving straight-
23  forward application of the law, and which does not present novel or difficult issues requiring a
24  high level of skill or specialization,' courts have generally found that higher rates are
25  unwarranted." *See Johnson v. Baglietto*, No. 19-CV-06206-TSH, 2020 WL 3065939, at *11 (N.D.
26  Cal. May 21, 2020) (citing *Oakwood Ctr. LLC*, 2019 WL 7209040, at *13), *report and*
27  *recommendation adopted*, No. 19-CV-06206-HSG, 2020 WL 3060902 (N.D. Cal. June 9, 2020).
28  And "[t]he sheer number of ADA cases that [Mr. Johnson's] counsel is litigating [] underscores

United States District Court
Northern District of California

the straightforward nature of their cases." *Id.* (noting that Mr. Johnson's counsel "stated that as of November 7, 2019, [counsel's firm], consisting of 20 lawyers, was simultaneously litigating 'over a thousand' ADA cases in the Northern District of California and approximately 1,500 ADA cases in the Central District of California. The law firm had previously litigated approximately 2,500 ADA cases in the Eastern District of California." (internal citations omitted)).

Mr. Johnson cites to two decisions by another court in this district: *Love v. Rivendell II, Ltd.*, in which the court approved a $650 hourly rate for Mr. Potter and Mr. Handy, and *Johnson v. Khalsa*, in which the court approved a $650 hourly rate for Mr. Potter and Mr. Handy and a $450 hourly rate for Ms. Seabock. *See* Mot. 19; *see also* R. & R., *Love v. Rivendell II, Ltd.*, No. 18-cv-03907-JST (EDL) (N.D. Cal. Mar. 11, 2019) ("R. & R., *Love v. Rivendell II, Ltd.*"), ECF 25; Order Adopting R. & R., *Love v. Rivendell II, Ltd.*, No. 18-cv-03907-JST (EDL) (N.D. Cal. Apr. 18, 2019), ECF 30; R. & R., *Johnson v. Khalsa*, No. 4:19-cv-02725-SBA (N.D. Cal. March 24, 2020) ("R. & R., *Johnson v. Khalsa*"), ECF 25; Order Adopting R. & R., *Johnson v. Khalsa*, No. 4:19-cv-02725-SBA (N.D. Cal. April 8, 2020), ECF 26. In both *Rivendell* and *Khalsa*, Mr. Johnson asked for fees as part of a motion for default judgment, and, in part as with his claim here, Mr. Johnson alleged that the defendants failed to provide accessible parking spaces for disabled persons. *See* R. & R., *Johnson v. Khalsa*; R. & R., *Love v. Rivendell II, Ltd.* As other courts in this district recently observed, the *Rivendell* decision relied on cases, such as *Civil Rights Education* and *Rodriguez*, that concerned work that was substantially different than the work performed in the present action. *See, e.g.*, *Oakwood Ctr. LLC*, 2019 WL 7209040, at *11 (granted default judgment in ADA case but distinguished case from *Civil Rights Education* and *Rodriguez*); *AutoZone, Inc.*, 2019 WL 2288111, at *6 n.4 (same). Indeed, *Civil Rights Education* was a complex class action matter involving 54 hotels spread among multiple states and *Rodriguez* involved an ADA claim that included trial and post-trial attorneys' fees. *See Civil Rights Educ. and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, No. 15-cv-00216-DMR, 2016 WL 1177950, at *1 (N.D. Cal. Mar. 22, 2016); *Rodriguez v. Barrita*, 53 F. Supp. 3d 1268, 1279–80 (N.D. Cal. 2014). And the *Khalsa* decision in awarding attorneys' fees was reached without explicitly relying on any case law. *See* R. & R., *Johnson v. Khalsa*, at 6. Therefore, the Court is

16

not persuaded that the rates awarded in *Rivendell* or *Khalsa* are appropriate here. Aside from *Rivendell* and *Khalsa*, Mr. Johnson does not identify any other rulings in which courts have awarded Mr. Johnson fees at this rate for any of his attorneys. *See* Mot. 19. As such, the Court is not persuaded that Mr. Johnson's evidence justifies the rates he is requesting. Additionally, the higher rates are not justified because of the cookie-cutter nature of counsel's filings. In fact, at least two documents submitted here retain the name of a different plaintiff, "Samuel Love," presumably from an unrelated case.

Lastly, Mr. Johnson has requested reimbursement of fees for legal assistants at an hourly rate of $100. *See* Handy Decl. ¶ 6. In support of this rate Mr. Johnson cites *Perri v. CA 199 Arcadia Owner LLC*, No. CV-20-05849-RSWL-KSX, 2020 WL 6939839 at *8 (C.D. Cal. Nov. 24, 2020) (holding that $175 hourly rate is reasonable in the *Central District of California*) (emphasis added). In the Northern District of California courts have found an hourly rate of $100 reasonable for paralegal fees. *See Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 990 (N.D. Cal. 2005). Since Mr. Johnson has requested a rate for legal assistants in line with this district the Court finds $100 reasonable for legal assistant fees.

### b. Hours

Mr. Johnson requests fees based on 5.92 hours of work. *See* Billing Summ. 8-9. This Court and other courts in this district have found approximately 11 hours of work to be reasonable for similar cases. *See, e.g.*, *Ridola*, 2018 WL 2287668 at *17 (granted motion for default judgment in ADA case, found 11.1 hours to be reasonable); *VN Alliance LLC*, 2019 WL 2515749, at *8 (granted motion for default judgment in ADA case, found 11.3 hours to be reasonable). Mr. Johnson's billing summary shows 5.92 hours were expended in this litigation: Mr. Handy and Mr. Potter together expended 2.52 hours, Ms. Gutierrez expended 2.44 hours, and legal assistants Mr. Sheaffer, Ms. Callueng, and Ms. Pannu expended 0.96 hours. *See* Billing Summ. 8-9. Further, the Court has reviewed the itemized statement of Mr. Johnson's counsel's legal work and finds no issue with the amount of time or activities that Mr. Johnson's counsel has conducted. Billing Summ. 8-9.

### iii. Conclusion

In sum, the Court finds the adjusted hourly rates of $475, $250 and $100 reasonable for the 5.92 hours expended to be reasonable. Mr. Johnson does not request a multiplier for the lodestar amount. Multiplying the reasonable hourly rates, $475, $250, and $100 the hours reasonably expended, 2.52, 2.44, 0.96 respectively, yields a lodestar amount of $1,903 in attorneys' fees.

### D. Costs

In addition, Mr. Johnson seeks $530 in costs. Billing Summ. 9; Mot. 22–23. This includes the filing fee ($400), service costs ($30), and investigation costs ($100). Billing Summ. 9; Mot. 20. The Court will apply the $100 listed in Mr. Johnson's motion. Mot. 20. The ADA provides that the prevailing party may recover "litigation expenses[] and costs." 42 U.S.C. § 12205; *see VN Alliance LLC*, 2019 WL 2515749, at *8 (including investigation costs into litigation expenses). As such, Mr. Johnson has provided a billing summary to substantiate his request for $530 in filing fees, service costs, and investigation costs. Mot. 20, Billing Summ. 9.

## VI. ORDER

For the foregoing reasons, IT IS ORDERED THAT:

1. Plaintiff's motion for default judgment is GRANTED.
2. Plaintiff is awarded statutory damages in the amount of $4,000.
3. Plaintiff is awarded $2,433 in attorneys' fees and costs.
4. Plaintiff is granted an injunction requiring Defendants to bring their parking lot into compliance with the 2010 ADAAG Standards no later than six months after service of this injunction.

Plaintiff shall submit a revised proposed judgment and injunction that is consistent with this order within 7 days.

**IT IS SO ORDERED.**

Dated: April 19, 2021

_____
BETH LABSON FREEMAN
United States District Judge